UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JUDITH KOERNER,                    :
                                   :CIVIL ACTION NO. 3:17-cv-455
          Plaintiff,               :
                                   :(JUDGE CONABOY)
     v.                            :
                                   :
GEICO CASUALTY COMPANY,            :
                                   :
          Defendant.               :
                                   :

## MEMORANDUM

Pending before the Court is Defendant's, GEICO Casualty
Company, Motion to Dismiss Counts I, II and III (compensatory and
consequential damages) of the Second Amended Complaint.  (Doc. 12.)
With this Motion, Defendant seeks dismissal of Count I for "Breach
of Contract--Uninsured Motorist Benefits" and Count II for "Breach
of Contract--Common Law Bad Faith" as moot.  Defendant seeks
dismissal of Count III for Statutory Bad Faith insofar as Plaintiff
seeks compensatory and consequential damages because theses damages
are not available under Pennsylvania's Bad Faith Statute, 42 Pa.
C.S. § 8371.  (*Id.*)  The Court concludes the motion is properly
granted.

## I. Background

As set out in the Second Amended Complaint, the case arises
from a motor vehicle accident which took place on May 4, 2016.
(Doc. 8 ¶ 5.)  Plaintiff alleges that she was injured when objects
from an unidentified vehicle "were thrust into the roadway" on
which Plaintiff was traveling and her car was forced off the road

into a guardrail. (*Id.*) Plaintiff had a policy of automobile insurance with Defendant at the relevant time. (Doc. 8 ¶ 3.) Because Plaintiff sustained injuries and damages as a result of the accident, she sought uninsured motorist benefits under her policy with Defendant. (Doc. 8 ¶ 8.)

Count I of the Second Amended Complaint is for "Breach of Contract—Uninsured Motorist Benfits." (Doc. 8 at 2.) In Count I Plaintiff avers the following: her attorney, Charles Kannebecker, Esquire, spoke to Paul Brunskole, Defendant's employee, concerning the uninsured motorist claim and Mr. Brunskole told Mr. Kannebecker that Plaintiff had made a statement to GEICO in which she said the accident occurred when she blacked out and lost control of her vehicle and careened into a guardrail (Doc. 8 ¶¶ 11-13); Mr. Brunskole's story was a fabrication intended to bar her from recovery (*id.* ¶¶ 14-17); Defendant denied Plaintiff's claim and refused to make payment of uninsured motorist benefits (*id.* ¶ 19); in denying the claim, Defendant breached the policy of insurance and violated the duties of good faith and fair dealing (*id.* ¶¶ 20-21); Plaintiff was forced to institute suit and incur fees and costs in order to recover uninsured motorist benefits to which she was entitled (*id.* ¶ 23); and by failing to tender the unisured motorist coverage in a timely manner, Defendant's violation of the duties of good faith and fair dealing exposed itself to payment of uninsured motorist coverage in excess of the policy limits (*id.* ¶

2

24). Plaintiff asserts that "[t]ender of the uninsured motorist limit of coverage, in an untimely manner, does not insulate the defendant, GEICO, from the obligation to fully satisfy any verdict or judgment entered in connection with the claim for recovery of uninsured motorist benefits. *See Birth Center v. St. Paul*, 787 A>2d 376 (Pa. 2001)." (*Id.* ¶ 28.) In the *ad damnum* clause, Plaintiff seeks "the amount of damages she sustained as a result of the negligence and carelessness of the unidentified and thus uninsured motorist, together with costs, disbursements, and other relief deemed just and proper by the Court." (Doc. 8 at 5.)

Count II alleges a "Breach of Contract – Common Law Bad Faith." (Doc. 8 at 5.) In Count II Plaintiff avers that Defendant "acted in bad faith and in violation of the common law obligations of good faith and fair dealing in failing to properly and fairly investigate, evaluate and negotiate the uninsured motorist claim." (*Id.* ¶ 30.) In subparagraphs (a) to (y), Plaintiff identifies the actions giving rise to the violation. (*Id.*) She states that she is entitled to recover all direct, indirect, compensatory, and consequential damages by reason of Defendant's common law bad faith and reiterates Defendant's exposure to paying uninsured motorist benefits in excess of the policy limits by reason of the breach of duties of good faith and fair dealing. (*Id.* ¶¶ 35-38.) Plaintiff again asserts that "[t]ender of the uninsured motorist limit of coverage, in an untimely manner, does not insulate the defendant,

3

GEICO, from the obligation to fully satisfy any verdict or judgment entered in connection with the claim for recovery of uninsured motorist benefits. *See Birth Center v. St. Paul*, 787 A>2d 376 (Pa. 2001)." (*Id.* ¶ 41.) In the *ad damnum* clause, Plaintiff seeks "all common law bad faith damages including compensatory and consequential damages as well as other relief deemed just and proper by the Court." (Doc. 8 at 9.)

Count III alleges "Statutory Bad Faith." (Doc. 8 at 9.) With this count, Plaintiff seeks relief under Pennsylvania's Bad Faith Statute, 42 Pa. C.S.A. § 8371. (*Id.* § 46.) She does so on the same bases that she identifies in Count II. (*Id.* ¶¶ 30(a)-(y), 50(a)-(y).) In the *ad damnum* clause, Plaintiff seeks "all statutory bad faith damages including interest, fees, costs, punitive damages and any and all other compensatory and consequential damages as well as all other relief which is deemed just and proper by the Court." (Doc. 8 at 14.)

Plaintiff originally filed a Complaint in the Pike County Court of Common Pleas on May 19, 2016. (*See* Doc. 1-1 at 4-6.) On or about February 1, 2017, GEICO sent a letter to Plaintiff's counsel tendering the policy limits of the uninsured motorist coverage on her automobile policy and enclosed a check in the amount of $15,000. (Doc. 12-3 at 4.) On February 22, 2017, Plaintiff filed an Amended Complaint in the Court of Common Pleas of Pike County. (Doc. 1-1 at 53-62.) Defendant filed the Notice

4

of Removal on March 13, 2017, asserting that removal was appropriate based on diversity jurisdiction. (Doc. 1.) Plaintiff filed Plaintiff's Motion for Remand (Doc. 10) on April 5, 2017, which the Court denied by Memorandum and Order (Docs. 20, 21) of May 18, 2017. Having established that diversity jurisdiction is appropriate (*see* Doc. 20), the Court now addresses Defendant's, GEICO Casualty Company, Motion to Dismiss Counts I, II and III (compensatory and consequential damages) of the Second Amended Complaint (Doc. 12) which is fully briefed and ripe for disposition.

## II. Discussion

### A. *Motion to Dismiss Standard*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the reviewing court may dismiss a complaint for "failure to state a claim upon which relief may be granted." Detailed pleading is not required--"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give fair notice of what the . . . claim is and the grounds upon which it rests,' *Conley v. Gibson*, 355 U.S. 41, 47 . . . (1957)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Court noted that, although Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing

5

*Twombly*, 550 U.S. at 555). *Iqbal* also reiterated the *Twombly*
guidance that "[a] pleading that offers 'labels and conclusions' or
'a formulaic recitation of the elements of a cause of action will
not do.' 550 U.S. at 555 . . . Nor does a complaint suffice if it
tenders 'naked assertion[s]' devoid of 'further factual
enhancement.' *Id.* at 557." 556 U.S. at 678.

> To survive a motion to dismiss, a
> complaint must contain sufficient factual
> matter, accepted as true, to state a claim to
> relief that is plausible on its face."
> [*Twombly*, 550 U.S.] at 570, 127 S. Ct. 1955.
> A claim has facial plausibility when the
> plaintiff pleads factual content that allows
> the Court to draw the reasonable inference
> that the defendant is liable for the
> misconduct alleged. *Id.*, at 556, 127 S.Ct.
> 1955. The plausibility standard is not akin
> to a "probability requirement," but it asks
> for more than a sheer possibility that a
> defendant has acted unlawfully. *Ibid.* Where
> a complaint pleads facts that are "merely
> consistent with" a defendant's liability, it
> "stops short of the line between possibility
> and plausibility of 'entitlement to relief.'"
> *Id.*, at 557, 127 S. Ct. 1955 (brackets
> omitted).

556 U.S. at 678.

Pursuant to *Twombly* and *Iqbal*, the Court of Appeals for the
Third Circuit set out three steps required of a court reviewing the
sufficiency of a claim in *Connelly v. Lane Constr. Corp.*, 809 F.3d
780, 787 (3d Cir. 2016).

> First, it must "tak[e] note of the elements
> [the] plaintiff must plead to state a claim."
> *Iqbal*, 556 U.S. at 675, 129 S.Ct. 1937.
> Second, it should identify allegations that,
> "because they are no more than conclusions,

> are not entitled to the assumptions of
> truth." *Id.* at 679, 129 S.Ct. 1937. *See
> also Burtch v. Milberg Factors, Inc.*, 662
> F.3d 212, 224 (3d Cir. 2011) ("Mere
> restatements of the elements of a claim are
> not entitled to the assumption of truth."
> (citation and editorial remarks omitted)).
> Finally, "[w]hen there are well-pleaded
> factual allegations, [the] court should
> assume their veracity and then determine
> whether they plausibly give rise to an
> entitlement to relief." *Iqbal*, 556 U.S. at
> 679, 129 S.Ct. 1937.

809 F.3d at 787. Importantly, a Plaintiff is not required to
establish the elements of a *prima facie* case--"the post-*Twombly*
pleading standard 'simply calls for enough facts to raise a
reasonable expectation that discovery will reveal evidence of the
necessary element[s].'" *Connelly*, 809 F.3d at 789 (quoting
*Twombly*, 550 U.S. at 556); *see also Phillips v. City of Allegheny*,
515 F.3d 224, 234 (3d Cir. 2008).

Finally, the district court must extend the plaintiff an
opportunity to amend before dismissing a complaint unless amendment
would be inequitable or futile. *Phillips*, 515 F.3d at 245; *Grayson
v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

## B. *Defendant's Motion*

As noted above, Defendant asserts that Counts I and II should
be dismissed as moot, and the requests for compensatory and
consequential damages in Count III should be dismissed. (*See* Doc.
12 at 6.) If the motion is granted, Plaintiff's Second Amended
Complaint would go forward only as to Plaintiff's claim for

statutory bad faith damages in Count III.

**1.** **Count I, Breach of Contract--Uninsured Motorist Coverage and Count II, Breach of Contract--Common Law Bad Faith**

Defendant first argues that Count I is moot and should be dismissed because it has tendered the full policy limits for Plaintiff's uninsured motorist claim--the averment in Count I that she is entitled to a greater amount of uninsured motorist coverage is incorrect. (Doc. 12-3 at 5-11.) Plaintiff responds that Defendant's wrongful and fraudulent disclaimer of uninsured motorist coverage caused her to file suit and exposed Defendant to an excess verdict. (Doc. 15-1 at 10-11.)

Defendant then argues that Plaintiff's common law bad faith claim is subsumed into her breach of contract claim which is now moot. (Doc. 12-3 at 14.) Plaintiff begins her opposition to the dismissal of Count II with the assertion that "Pennsylvania has long recognized a cause of action at common law for bad faith. Traditionally, common law bad faith claims arose in the context of an excess verdict in a third party tort action[,] and the same is true for uninsured and underinsured motorist claims." (Doc. 15-1 at 11-12.) Notably, Plaintiff does not argue that her claim for contractual bad faith is not subsumed into her breach of contract claim in Count I. (*See* Doc. 15-1 at 11-16.)

Without any argument to the contrary, the Court need not engage in a lengthy discussion of whether Count II is subsumed by Count I in this case. The weight of authority indicates that the

8

implied covenant of good faith and fair dealing inherent in every contract does not give rise to an independent cause of action where a breach of contract count has been lodged. *See, e.g., Porter v. Safeco Ins. Co.*, Civ. A. No. 3:15-CV-759, 2016 WL 556706, at *6 (M.D. Pa. Feb. 9, 2016) (listing cases). Here, Plaintiff alleges a breach of contract claim in Count I based on the same conduct alleged in Count II. (Doc. 8 ¶¶ 9-41.) Both Counts rely on *Birth Center* for the proposition that untimely tender of the uninsured motorist coverage does not isolate Defendant from the obligation to fully satisfy any verdict or judgment entered in connection with the claim for recovery of uninsured motorist benefits. (Doc. 8 ¶¶ 28, 41 (citing *Birth Center*, 787 A.2d 376).) However, where Plaintiff appears to seek excess uninsured motorist benefits in Count I, she seeks "all common law bad faith damages including all compensatory and consequential damages" in Count II. (Doc. 8 at 9; *see also id.* ¶¶ 24, 31, 35.)

In this situation, the Court will consider Count II merged into Count I and will deem the distinctive elements of Count II as having been asserted in Count I. *See Porter*, 2016 WL 556706, at *6.

Defendant cites *Romero v. Allstate*, Civ. A. No. 16-4037, 2017 WL 895593 (E.D. Pa. March 7, 2013), for the proposition that "[a] breach of contract claim arising out of an Uninsured Motorist claim for refusing to pay policy proceeds is moot and should be dismissed

where the Defendant insurance company has tendered the full policy limits." (Doc. 12-3 at 6 (citing *Romero*, 2017 WL 895593, at *3).) Defendant also cites *Romero's* reliance on *Kane v. U-Haul Int'l Inc.*, 218 F. App'x 163, 169 (3d Cir. 2007), quoting *Romero's* statement that "[i]n the non-precedential case, the Third Circuit held that a [Uninsured Motorist] breach claim based on failure to pay insurance proceeds was moot where the insurer offered the policy limit after the District Court proceedings but before the appellate ruling." (Doc. 12-3 at 6 (citing *Romero*, 2017 WL 895593, at *3).)

While Defendant's citations are not inaccurate, they are incomplete. Importantly, *Romero* explained that

> *Kane* cited an earlier Third Circuit case, which said there is no case or controversy for the court to hear when an offer of complete relief dissolves a plaintiff's interest in a claim. *See Weiss v. Regal Collections*, 385 F.3d 337, 340, (3d Cir. 2004), as amended (Oct. 22, 2004) *abrogated by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016).[1]

*Romero*, 2017 WL 895593, at *3. Under this reasoning, it is the offer of *complete relief* that dissolves a plaintiff's interest in the claim and not simply the tender of policy limits. A review of the *Kane* holding supports this analysis. In *Kane*, suit was brought

---

[1]  *Romero* explains that "*Weiss* has seen some negative treatment, but that disagreement arises in the context of offers of judgment where, as the Supreme Court noted, a plaintiff is entitled to reject the terms of an offer even if they are very good." 2017 WL 895593, at *3 (citations omitted).

before the $15,000 policy limit was tendered: $500 had been provided to the insured and the remaining $14,500 was deposited with the District Court. 218 F. App'x at 165. The defendants notified the District Court that they stipulated that the insured's loss was the policy limit. *Id.* On these facts, the District Court dismissed the insured's claim for breach of contract against the defendant insurance company, concluding the claim was moot because the insurer had offered the policy limit and the insured had agreed she was only entitled to that amount. *Id.* at 168-69. On appeal, the insured said the District Court erred in dismissing her claim against the insurer because she may be entitled to prejudgment interest. *Id.* at 169. The panel of the Third Circuit Court of Appeals affirmed, stating that it agreed with the District Court that the

> remaining claim is moot because the [insured] was offered the full amount that she could recover. *See Weiss v. Regal Collections*, 385 F.3d 337, 340 (3d Cir. 2004). As there is no judgment in the case, [the insured] cannot recover prejudgment interest. *See Willis v. Eighner*, 168 N.J. Super. 197, 402 A.2d 269, 271 (1978).

218 F. App'x at 169. As in *Romero*, the claim was moot because the plaintiff was entitled to recover no more than the policy limits which had been tendered/offered. *Weiss* also supports the conclusion that mootness is based on the tender or offer of the *full amount* that a plaintiff could recover on the claim. Discussing Article III's limitation of federal court jurisdiction

11

to "cases and controversies," *Weiss* stated that "[a]n offer of complete relief will generally moot the plaintiff's claim, as at that point the plaintiff retains no personal interest in the outcome of the litigation." 385 F.3d at 340 (citing *Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991)). *Weiss* quoted *Rand* for the proposition that "'[o]nce the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate and a plaintiff who refuses to acknowledge this loses outright, under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake.'" *Id.*

Defendant's contention that the tender of the uninsured motorist coverage policy limits moots Plaintiff's breach of contract claim (Doc. 12-3 at 6) leads to the question of whether the tender in this case provided the full amount Plaintiff could recover. *See Weiss*, 385 F.3d at 340.

In the introductory section of her brief, Plaintiff summarizes her contract claims: Defendant's untimely tender of uninsured motorist benefits

> is in direct contradiction of fundamental fairness and equity. . . . In this lawsuit, Koerner is entitled to have the jury fully value the uninsured motorist claim. Koerner may then seek to have GEICO pay the entire verdict, regardless of the policy limit as a consequential damage resulting from GEICO's bad faith conduct. These consequential damages which [sic] are recoverable in the common law bad faith claim. *See Birth Center v. St. Paul*, 787 A.2d 376 (Pa. 2001).

(Doc. 15-1 at 10.)

Defendant acknowledges that the Pennsylvania Supreme Court in *Birth Center* held that compensatory damages were available to the plaintiff in a common law bad faith action. (Doc. 12-3 at 9 (citing *Birth Center*, 787 A.2d at 387). *Birth Center* specifically held that

> where an insurer acts in bad faith, by
> unreasonably refusing to settle a claim, it
> breaches its contractual duty to act in good
> faith and its fiduciary duty to its insured.
> Therefore, the insurer is liable for the
> known and/or foreseeable compensatory damages
> of its insured that reasonably flow from the
> insurer's bad faith conduct.

787 A.2d at 389. Although *Birth Center* was decided in the context of a third party insurance situation, courts within the Third Circuit have persuasively concluded that the holding extends to first party insurance claims.[2] *See, e.g., Kakule v. Progressive Cas. Ins. Co.*, Civ. A. No. 06-4995, 2007 WL 1810667, at *3-6 (E.D. Pa. June 20, 2007) (citing *Birth Center*, 787 A.2d at 385); *see also*

---

[2]    Some courts have relied on *D'Ambrosio v. Pa. Nat. Mut. Cas. Co.*, 431 A.2d 966 (Pa. 1981), which was a first party insurance case, for the proposition that Pennsylvania does not recognize common law claims for bad faith, but a discussion of *D'Ambrosio* in *Birth Center* indicates that the case accurately stands only for the proposition that Pennsylvania does not recognize common law actions for bad faith that sound in *tort*: "*D'Ambrosio* does not stand for the proposition common law contractual remedies for an insurer's bad faith are barred by Pennsylvania law." *Kakule v. Progressive Cas. Ins. Co.*, Civ. A. No. 06-4995, 2007 WL 1810667, at *4, 6 (E.D. Pa. June 20, 2007) (citing *Birth Center*, 787 A.2d at 385). *Birth Center* made no mention of *D'Ambrosio's* first party context. 2007 WL 1810667, at *6.

13

*Porter*, 2016 WL 556706, at *5; *Smith v. Allstate Ins. Co.*, 904 F. Supp. 2d 515, 521-22 (W. D. Pa. 2012).

Compensatory damages traditionally available under a breach of contract claim

> are damages meant to place the injured party in the place he was prior to the injury. BLACK'S LAW DICTIONARY 390 (6th ed. 1990). Compensatory damages consist of both "general" and "consequential" or "special" damages. While general damages compensate the injured party for the immediate injury or loss sustained, consequential damages are damages that flow from the consequences of the direct injury. *Id.* To recover consequential damages, a litigant must prove that they were "reasonably foreseeable" to the parties at the time they entered into the contract. *AM/PM Franchise Assoc. v. Atlantic Richfield, 526 Pa. 110, 584 A.2d 915, 920-21 (1990).*

*Birth Center*, 787 A.2d at 390 n.1 (Nigro, J., concurring). Thus, where a plaintiff seeks a payment of policy proceeds as well as compensatory damages, the payment of proceeds does not necessarily moot the claim.

Here the parties agree that the policy limits for uninsured motorist coverage have been tendered; Defendant maintains this is all Plaintiff is entitled to (Doc. 12-3 at 9-10) but Plaintiff seeks the full valuation of her claim (*see, e.g.*, Doc. 15-1 at 11)--an amount which Plaintiff alleges is potentially in excess of the policy's uninsured motorist policy limits. To the extent Plaintiff seeks uninsured motorist benefits in excess of her policy limits, the Court concludes she has not undermined Defendant's

14

assertions that her policy "expressly limits her recovery for uninsured motorist benefits after instigating suit to her policy limits." (Doc. 12-3 at 7.) Thus, the question is whether she may be entitled to additional damages in this case.

As noted above, Defendant recognizes the availability of compensatory damages in a common law bad faith action (Doc. 12-3 at 10), but argues that the only injury identified (other than for attorney fees and being forced to institute suit) occurred as a result of the alleged breach of contract (Doc. 12-3 at 13) and it paid compensatory and consequential damages to Plaintiff on her Count I breach of contract claim (Doc. 18 at 6). Plaintiff reiterates that she is entitled to "a full valuation of her uninsured motorist claim." (*Id.* at 11.)

In Counts I and II of her Second Amended Complaint and her brief in opposition to Defendant's motion, Plaintiff regularly asserts that she is entitled to pursue a claim seeking the full amount of any verdict regarding her uninsured motorist claim and tender of uninsured motorist benefits does not insulate Defendant from the obligation to fully satisfy any verdict or judgment in connection with her claim for recovery of unisured motorist benefits. (Doc. 8 ¶¶ 27, 28, 40, 41; Doc. 15-1 at 10.) In the section of her brief specifically addressing common law bad faith, Plaintiff argues that compensatory damages are allowed for a first party common law bad faith claim in Pennsylvania and, just as in

15

third party cases, the insurer is liable for payment of an excess verdict in a first party case. (Doc. 15-1 at 11-16.)

Accepting the argument that Pennsylvania law allows recovery of compensatory damages for a breach of the common law duties of good faith and fair dealing in a first party case, consideration of a potential verdict in excess of policy limits as compensatory damages in a first party case is a distinct issue. Defendant distinguishes third party and first party claims in its supporting brief, noting that the Pennsylvania Supreme Court in *Birth Center* did not hold that an insured was entitled to benefits above policy limits and, in this first party action, there is no verdict or judgment to satisfy. (*See* Doc. 12-3 at 9-10.) Plaintiff does not directly refute Defendant's assertions, but sets out the Pennsylvania Supreme Court rule regarding liability for excess verdicts in third party actions announced in *Cowden v. Aetna Cas. & Sur. Co.*, 134 A.2d 223 (Pa. 1957), and states, without citation to any first party case, that the rule applies to first party uninsured and underinsured motorist claims. (Doc. 15-1 at 11-12.)

For the reasons discussed below, the Court concludes Plaintiff has not contradicted the distinction made by Defendant between first party and third party cases because authority which supports the award of compensatory damages in the context of a contractual bad faith claim and authority which supports the insurer's liability for a judgment in excess of policy limits in some

16

circumstances do not support the proposition that a verdict in excess of policy limits in a first party action is a conseqential damage recoverable in a first party action.

In *Cowden,* the Pennsylvania Supreme Court stated that

> [i]t is established by the greatly preponderant weight of authority in this country that an insurer against public liability for personal injury may be liable for the entire amount of a judgment secured by a third party against the insured, regardless of any limitation in the policy, if the insurer's handling of the claim, including a failure to accept a proffered settlement, was done in such a manner as to evidence bad faith on the part of the insurer in the discharge of its contractual duty.

134 A.2d at 227.

Stating summarily that this rule applies to uninsured and underinsured motorist claims, Plaintiff cites another third party case, *Gray v. Nationwide Mutual Ins. Co.,* 223 A.2d 8 (Pa. 1996), in support of the statement that Defendant "has exposed itself to payment of an excess verdict by its bad faith failure to settle." (Doc. 15-1 at 12.)

*Cowden* and *Gray* support the proposition that excess verdict damages in a third party case may be compensatory damages for purposes of a contractual bad faith claim in a subsequent suit by the insured against its insurer. However, the rationale for the rule does not apply to a first party uninsured motorist coverage case. As explained in *Birth Center,* "[r]equiring insurers, who act in bad faith, to pay excess verdicts protects insured from

liability that, absent the insurer's bad faith conduct, the insured would not have incurred."[3]  787 A.2d at 388.

---

[3]  In the margin, *Birth Center* additionally explained that

> [t]he rationale for requiring an insurer to pay an excess verdict derives from the insurer's right to control the defense of an action.  *Cowden*, 134 A.2d at 228.  Where the insurance company takes control of the decision to settle or litigate actions brought by third parties, the insurance company owes its policyholder a fiduciary duty, among other things, to engage in good faith settlement negotiations.  *Gedeon v. State Farm Mutual Automobile Insurance Company*, 410 Pa. 55, 188 A.2d 320 (1963).  In *Gedeon*, we stated that:

>> by asserting in the policy the right to handle all claims against the insured, including the right to make a binding settlement, the insurer assumes a fiduciary position towards the insured and becomes obligated to act in good faith and with due care in representing the interests of the insured.

> *Id.* at 322.  Because of the insurer's controlling role in the litigation, the insurer enters a fiduciary relationship with the insured and accepts the responsibility to protect the interests of its insured.  *Gray v. Nationwide Mutual Insurance Company*, 422 Pa. 500, 223 A.2d 8 (1966) (holding that an insured's right to recover an award in excess of his policy limits from his insurer, when the insurer refuses to settle a claim against the insured in bad faith, was assignable). Notwithstanding the insurer's contractual duty to its insured, the interests of insurers and their insureds are not always consistent and are frequently in conflict with one another.  Indeed, an insured's interests are particularly at risk when a plaintiff expresses a willingness to settle

18

Plaintiff's position that an entire verdict is recoverable as a consequential damage in this common law bad faith claim (Doc. 15-1 at 10) can find no support in the recovery rule set out in *Cowden* for third party cases in that the rationale for the rule has no corollary in this first party case. The insurer's handling of the third party claim which exposed the insured to damages in excess of the policy limits is the crux of the rule, and a first party UM claim does not present a similar relationship or exposure to the insured. A potential excess verdict is the only consequential damage Plaintiff identifies in her responsive brief. (Doc. 15-1 at 10.) Plaintiff infers that she sustained injury in excess of the

_____

> for the policy limits. When it becomes clear
> that an insurer could settle a third-party
> claim against its insured for the limits of
> the policy, and thereby releases its insured
> from any worry about an excess verdict, the
> insurer must be vigilant to ensure that it
> has a reasonable basis to try the case and
> that it is not breaching its fiduciary duty
> to its insured, based upon a small chance of
> a defense verdict. *Cowden*, 134 A.2d at 228.
> An insured's interests are particularly in
> jeopardy under the foregoing facts because
> whether the insurer settles for the policy
> limits or loses at trial, its risk is the
> same; in both instances, and absent bad
> faith, all it would have to pay would be the
> policy limits. *Id.* In such a situation, a
> faithless insurer would have nothing to lose
> by trying the case; it might as well take the
> risk and hope for a defense verdict. At the
> same time, the insured would have no reason
> to risk a trial. *Cowden*, 134 A.2d at 223.

787 A.2d at 388 n.17.

19

policy coverage as a result of the underlying incident and that a jury's full valuation of her uninsured motorist claim would exceed the policy limit. (Doc. 15-1 at 10.) Importantly, such excess would not be a liability incurred by Plaintiff which is attributable to the insurer's bad faith, the excess would be a result of the injury sustained by the "negligence and carelessness of the unidentified and thus uninsured motorist" (Doc. 8 at 5). Plaintiff presents no facts which indicate that she incurred liability above uninsured motorist coverage policy limits *because of* the insurer's bad faith. Thus, Plaintiff's claim for common law bad faith cannot proceed on the basis asserted.

Plaintiff averment that the Court should apply an analysis to this case similar to that applied in *Smith v. Allstate Ins. Co.*, 904 F. Supp. 2d 515 (W.D. Pa. 2012) (*see* Doc. 15-1 at 14-16), does not suggest a different outcome. In *Smith* the District Court discussed the application of *Birth Center's* common law bad faith holding to first party cases and considered the plaintiff's claim for contractual bad faith in the context of a two-count complaint alleging a count for contractual bad faith and a count for statutory bad faith. 904 F. Supp. 2d at 520. The underinsured motorist claim had been arbitrated before suit was filed and the defendant moved for summary judgment, arguing that "when an insurer pays an insured to satisfy an insured's claim under an insurance policy pursuant to an arbitration award, the insured may not assert

a breach of contract claim arising from an insurer's alleged bad faith in handling the claim." *Id.* at 521. *Smith* found the *Birth Center* holding applicable to first party cases after noting that

> [g]enerally, when an insurance company has paid the proceeds of an insurance policy, there can be no breach of contract claim because the insured has received what was due under the policy and therefore has no damages. . . . When a party sues for damages stemming from an insurer's bad faith in handling a claim, however, the damages sought may be different from damages compensated by payment pursuant to the insurance policy and therefore may not be remedied by such payment. *See Birth Ctr v. St. Paul Cos.*, 567 Pa. 386 787 A.2d 376, 385 (2001). . . .

*Smith*, 904 F. Supp. 2d at 521.

*Smith* supports two propositions, both accepted by the Court, *see supra*, that *Birth Center* applies to first party claims and a first party breach of contract claim based on contractual bad faith survives payment of proceeds due under the policy where the plaintiff seeks damages different from those compensated by payment pursuant to the insurance policy. 904 F. Supp. 2d at 520-23. In *Smith*, the "damages different from those compensated by payment pursuant to the insurance policy" were emotional distress damages allegedly related to the defendants's delay in tendering payment.[4]

---

[4] In *Birth Center*, "damages different from those compensated by payment pursuant to the insurance policy" were the plaintiff's claimed $700,000 in compensatory damages, specifically damage to the plaintiff's "business, reputation, and credit," allegedly related to the defendant's refusal to engage in reasonable settlement negotiations. 787 A.2d at 381. The Court noted that "the general damage suffered by the Birth Center was its liability

21

904 F. Supp. 2d at 522. Applying a similar analysis here, Plaintiff's only specifically identified consequential damage is a potential excess verdict on her uninsured motorist claim. (Doc. 15-1 at 10.) Plaintiff has presented no authority or argument supporting her theory of recovery and, as discussed above, the rationale for an insurer's excess verdict liability does not apply in this first party uninsured motorist case. Therefore, the *Smith* analysis does not save Plaintiff's breach of contract claim.

Finally, regarding Plaintiff's Count I *ad damnum* clause request for costs and disbursements (Doc. 8 at 5), Plaintiff has not countered Defendant's assertion that legal fees and related expenses are not available unless there is a contractual or statutory basis and here no such basis exists. (Doc. 12-3 at 10, 14 (citing *Porter*, 2016 WL 556706. at *4 (citing *Lucchino v. Commonwealth*, 809 A.2d 264 (Pa. 2002))).) Therefore, Plaintiff has provided no basis for these aspects of her breach of contract claim to go forward.

Because Plaintiff presents no basis for recovery on Counts I and II, these claims are properly dismissed. Although the foregoing discussion indicates that allowing leave to amend may be futile, in an abundance of caution, the Court will allow Plaintiff leave to amend her merged breach of contract claim. *See Phillips*, 515 F.3d at 245.

---

for the excess verdict" which was not part of the Birth Center's damages claim because the insurance company had paid the excess voluntarily. 787 A.2d at 390 n.1.

515 F.3d at 245.

## 2. **Count III - Statutory Bad Faith**

Defendant seeks partial dismissal of Count III, Plaintiff's claim for statutory bad faith pursuant to 42 Pa. C.S. § 8371, stating that the "Court should dismiss so much of Count III of the Second Amended Complaint in regards [sic] compensatory damages and consequential damages because the Bad Faith Statute does not permit recovery of compensatory damages and consequential damages." (Doc. 12-3 at 14.) Plaintiff responds that Defendant has not set forth any discernable reason for the request to dismiss Count III. (Doc. 15-1 at 20.) In its reply brief, Defendant confirms that it seeks only partial dismissal of Count III, quoting *Birth Center's* statement that "'[plaintiff] may not recover compensatory damages based on Section 8371.'" (Doc. 18 at 7 (citing Birth Center, 787 A.2d at 386).)

The Court concludes Defendant's statement of the law is correct and, therefore, partial dismissal of Count III is appropriate. The basis for the partial dismissal indicates that leave to amend Count III would be futile. *See Phillips*, 515 F.3d at 245. Aside from Plaintiff's requests for compensatory and consequential damages in Count III, the claim for statutory bad faith goes forward.

### III. Conclusion

For the reasons discussed above, Defendant's motion is

granted.  Counts I and II are dismissed without leave to amend
granted in accordance with the foregoing discussion.  Count III is
dismissed as to Plaintiff's requests for compensatory and
consequential damages, and Count III otherwise goes forward.  An
appropriate Order is filed simultaneously with this action.

RICHARD P. CONABOY
United States District Judge

DATED:  6-14-17

24