UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JUDITH KOERNER,                      :
                                     :CIVIL ACTION NO. 3:17-CV-455
            Plaintiff,               :
                                     :(JUDGE CONABOY)
      v.                             :
                                     :
GEICO CASUALTY COMPANY,              :
                                     :
            Defendant.               :
                                     :

---

**MEMORANDUM**

Here the Court considers Defendant's Motion for Summary Judgment (Doc. 51) filed on January 19, 2018. The action arises from an automobile accident and the subsequent uninsured motorist claim brought by Plaintiff Judith Koerner ("Plaintiff") against GEICO Casualty Company ("GEICO" "Defendant"). As outlined in the Court's September 29, 2017, Order, only Plaintiff's statutory bad faith claim, Count IV of her Third Amended Complaint (Doc. 26), remains before the Court. (Doc. 38 at 3-4.)

**I. Background**[1]

**A.    *Procedural Background***

This case was filed in the Court of Common Pleas of Pike County, Pennsylvania, on May 19, 2016. (Doc. 51-2 ¶ 1.) The action stems from a May 4, 2016, motor vehicle accident and Plaintiff seeking damages under her Uninsured Motorists ("UM")

---

[1] For the most part, internal citations in Defendant's, GEICO Casualty Company, Statement of Material Facts (Doc. 51-2) are omitted from this Background recitation.

coverage in her contract of automobile insurance with GEICO. (*Id.*) On February 22, 2017, Plaintiff filed an Amended Complaint, adding a second count for Breach of Contract and a third count for Bad Faith--Common Law and Statutory. (Doc. 51-2 ¶ 3.)

Defendant filed a Notice of Removal on March 13, 2017. (Doc. 1.) On April 5, 2017, Plaintiff filed a Motion for Remand (Doc. 10) which the Court denied by Memorandum and Order of May 18, 2017 (Docs. 20, 21).

Defendant filed Defendant's, GEICO Casualty Company, Motion to Dismiss Counts I, II and III (common law bad faith) of the Amended Complaint on March 20, 2017. (Doc. 3.) On March 30, 2017, Plaintiff filed a Second Amended Complaint. (Doc. 8.) Defendant filed Defendant's, GEICO Casualty Company, Motion to Dismiss Counts I, II and III (compensatory and consequential damages) of the Second Amended Complaint on April 13, 2017. (Doc. 12.) By Memorandum and Order of June 14, 2017, the Court granted Defendant's motion and determined that Counts I and II were dismissed without leave to amend and Count III was dismissed as to Plaintiff's request for compensatory and consequential damages but otherwise Count III went forward, and Plaintiff was granted leave to amend. (Doc. 23 at 24; Doc. 24 at 1-2.) Plaintiff sought reconsideration of this determination on June 21, 2017, which the Court denied on September 29, 2017. (Doc. 27.)

Plaintiff filed her Third Amended Complaint on June 27, 2017.

(Doc. 26.)  Defendant filed Defendant's, GEICO Casualty Company, Motion to Strike and/or Dismiss Plaintiff's Third Amended Complaint on July 14, 2017.  (Doc. 32.)  The Court granted the motion in part and denied it in part by Order of September 29, 2017.  (Doc. 38.)  Following the Court's Order, the only claim surviving is a claim for statutory bad faith based on allegations which survived Defendant's motion.  (Doc. 38 at 4.)

The pending summary judgment motion seeks dismissal of the remaining statutory bad faith claim.  (Doc. 51.)  Defendant's, GEICO Casualty Company, Statement of Material Facts (Doc. 51-2) and the Brief in Support of Summary Judgment (Doc. 52) were filed on January 19, 2018.  Plaintiff filed the Answer of Plaintiff to Motion for Summary Judgment of Defendant (Doc. 55) on February 2, 2018, with attachments including a Memorandum of Law (Doc. 55-1).  Plaintiff did not file the required response to Defendant's statement of facts and, therefore, the facts set out by Defendant are deemed admitted.  *See* L.R. 56.1.  The Answer of Plaintiff to Motion for Summary Judgment of Defendant (Doc. 55) is not a recognized filing in response to a summary judgment motion under the Local Rules of Court of the Middle District of Pennsylvania.  *See* L.R. 7.4, 7.6, 56.1.  Therefore, the Court considers only Plaintiff's Memorandum of Law as the response to Defendant's motion.

## A.  *Factual Background*

As noted above, the accident underlying this action took place

on May 4, 2016. (Doc. 51-2 ¶ 1.) At the time of the accident, Plaintiff was insured by Defendant. (Doc. 51-2 ¶ 15.) The policy, which had coverage for the period of December 9, 2015, through June 9, 2016, provided for "Uninsured Motorists/With Stacking Each Person/Each Occurrence" limits of "$15,000/$30,000." (Doc. 51-2 ¶ 16.) The Uninsured Motorists Coverage Pennsylvania (Stacked Limits) Amendment to Plaintiff's policy under DEFINITIONS defines a Hit-and-Run Motor Vehicle as

> a motor vehicle that causes an accident resulting in bodily injury to an insured and whose operator or owner is at fault and cannot be identified provided the accident:
>
> > (a) is reported to the police or proper government authority; and
> >
> > (b) the insured, or someone on his behalf, files with us within 30 days, or as soon as practicable thereafter, a statement setting forth the facts of the accident and claiming that he has a cause of action for damages arising out of the accident.

(Doc. 51-2 ¶ 17.) The Uninsured Motorists Coverage Pennsylvania (Stacked Limits) Amendment to Plaintiff's policy under CONDITIONS, Section 4, PROOF OF CLAIM-MEDICAL REPORTS states in part:

> As soon as possible, the insured or other person making the claim must give us written proof of claim, under oath if required. This will include details of the nature and extent of injuries, treatment, and other facts which may affect the amount payable. Proof of claim must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

(Doc. 51-2 ¶ 18.)

The GEICO Claims Note, dated 5/4/2016 05:26 PM, stated in part "PH/DR RPTS*** VI TRVLING ON RT 2887 WHEN RUG FELL FROM TRUCK IN FRT AND VI SWERVED AND STRUCK GUARDRAIL. PH STT THAT SHE BLACKED OUT." (Doc. 51-2 ¶ 34.) The GEICO Claims Note, dated 5/4/2016 05:42 PM, stated in part "PH PASSED OUT WHEN AX OCCURRED AND DOES NOT REMEMBER EXACTLY HOW IT OCCURRED. SHE ADV WOULD SUBMIT P/R WHEN AVAILABLE FOR FAO." (Doc. 51-2 ¶ 35.)

According to Plaintiff's responses to Interrogatories, the accident "occurred as a result of matter falling out of the back of a motor vehicle in front of Plaintiff, thereby causing the Plaintiff to swerve and striking a guardrail." (Doc. 51-2 ¶ 21.) She believed the debris was carpeting. (Doc. 51-2 ¶ 22.) She also stated in response to Interrogatories that she was "unsure if she lost consciousness." (Doc. 51-2 ¶ 26.)

A doctor's report on the day of the accident states Plaintiff said "she doesn't remember the entire accident." (Doc. 51-2 ¶ 27.) Other medical records indicate memory impairment regarding the accident: a May 12, 2016, doctor's report states "Pt does not recall accident--Lost control of car." (Doc. 51-2 ¶ 28.) A May 27, 2016, MRI included a diagnosis of "Concussion with < 1 hr loss consciousness" and "Memory loss or impairment" (Doc. 51-2 ¶ 29 ); a June 6, 2016, doctor's report noted that Plaintiff stated "she was involved in a motor vehicle accident on 5/4/16 and sustained a concussion[,] [s]he was unconscious and has no recollection of the

accident" (Doc. 51-2 ¶ ); a June 16, 2016, doctor's report stated in part that "Pt was involved in an accident on 5-4-16 while driving a rug fell out of truck and pt swerved to miss and hit guardrails[,] Pt lost consciousness and had a concussion" (Doc. 51-2 ¶ 31); a June 23, 2016, doctor's report stated in part "May 4 2016 motor vehicle accident in New Jersey patient was driving she does not recall the accident brief memory is sliding into the guard rail nothing else" (Doc. 51-2 ¶ 32); an August 31, 2016, doctor's report stated in part that "[t]he patient admitted that she lost consciousness and when first responders tried to talk to her, she could not answer her name and did not understand what happened" (Doc. 51-2 ¶ 33).

On or about May 10, 2016, Defendant sent Plaintiff a letter which stated in part:

> I need your help to begin processing your claim. I need you to complete the "Application for PIP Benefits" form and the HIPAA Compliance Authorization form, which have been sent to you under separate cover. These forms are essential to begin processing your claim. . . . We also need information regarding the facts of the accident, nature and cause of the injury, the diagnosis, and the anticipated course of treatment as promptly as possible after the accident, and periodically thereafter.

(Doc. 51-2 ¶ 36.)

On or about May 12, 2016, Plaintiff's attorney, Charles Kannebecker, sent a letter to GEICO, which stated in part:

6

> Please be advised that this office has been
> retained by Judith Keorner. . . . The
> accident was caused by an automobile which
> did not stay at the scene. The vehicle which
> left the scene had content fall out of the
> vehicle causing the accident. . . . Please
> accept this letter as a notification of claim
> for UM benefits under Ms. Koerner's coverage
> with GEICO Insurance Company. . . . Further,
> you should undertake any investigation which
> you elect as a result.

(Doc. 51-2 ¶ 37.)

On or about May 16, 2016, Defendant sent a letter to the Law
Office of Charles Kannebecker which stated in part:

> We received your letter of representation.
> Please have your client complete the enclosed
> PIP and HIPAA Compliant Authorization forms
> and promptly return them to us. Also, please
> send us any bills and/or documentation to
> support this claim.
>
> I have not yet obtained a recorded statement
> from your client and would ask that you
> contact me to schedule a time at which this
> can be accomplished.

(Doc. 51-2 ¶ 38.) On the same day, the claim was transferred to
Paul Brunskole for handling. (Doc. 51-2 ¶ 39.) The next day, Mr.
Brunskole ordered a copy of the police report and sent a letter to
and called Mr. Kannebecker. (Doc. 51-2 ¶ 40.) Later that day, Mr.
Kannebecker returned the call. (Doc. 51-2 ¶ 41.)

A recording of the May 17, 2016, phone conversation is
contained in the Statement of Material Facts. (Doc. 51-2 ¶ 43.)
There was discussion about the theory of recovery and lack of
supporting documentation to that date. (*Id.*) Neither party had

received a police report at the time, Mr. Brunskole noted that he had only Plaintiff's word about what had happened, and he said he needed more to find there was a UM claim. (*Id.*) Several times during the conversation, he expressed skepticism, said he had some follow-up questions and stated he wanted to take a recorded statement. (*Id.*) Mr. Kannebecker told Mr. Brunskole it seemed he had decided that there was no UM claim and he was intent on denying the claim. (*Id.*) Mr. Brunskole said he had not made a determination and reiterated his need for more information. (*Id.*) Mr. Kannebecker made numerous similar allegations during the call and, on each occasion, Mr. Brunskole reiterated that he had not made a decision but needed more information. (*Id.*) The phone call ended abruptly when Mr. Kannebecker ended the call after Mr. Brunskole said "So then – I am trying to help you out with this claim." (*Id.*)

After the call ended, Mr. Kannebecker faxed Mr. Brunskole with the "demand" that he preserve the recording of the phone call, adding that Mr. Brunskole "relayed that Mrs. Koerner told GEICO that she lost consciousness and that loss caused the accident." (Doc. 51-2 ¶ 44.) Mr. Kannebecker repeated these requests with a fax on May 20, 2016, and May 25, 2016. (Doc. 51-2 ¶¶ 49, 52.)

On or about May 18, 2016, Mr. Brunskole sent Mr. Kannebecker a letter requesting medical documentation and lost wage verification

as well as Plaintiff's signature on an enclosed authorization "so I may assist you in obtaining the documentation necessary to support your client's claim." (Doc. 51-2 ¶ 45.) He added that he had not yet obtained a recorded statement from Plaintiff. (*Id.*) On or about the same date, Mr. Brunskole sent another letter to Mr. Kannebecker stating that GEICO was still investigating the claim. (Doc. 51-2 ¶ 47.) He requested that Mr. Kannebecker forward the police accident report, a copy of all medical and hospital records and authorizations permitting the release of same, an uninsured motorist application, and any other documentation. (*Id.*)

As noted previously, Plaintiff filed suit in the Court of Common Pleas of Pike County on May 19, 2016. (Doc. 51-2 ¶ 48.)

On May 23, 2016, GEICO received the Police Report from the New Jersey State Police. (Doc. 51-2 ¶ 50.) The claim log sets out the following summary:

> PH stated was driving and a piece of rug or something fell off truck in front of me and I tried to avoid it and I spun out in the the g/rail. CL did not stop. Police invest revealed PH and CL in I-287 n/b near MM 58.5 in Oakwood Boro; due to debris falling off CL veh and onto hwy, PH ran off the road right, lost control of veh and hit g/rail. Green Pieces of artificial grass were observed in right lane and on shoulder of hwy consistent with PH statement. Per diagram, PH in center-right lane 2/4 prior to losing control. No CL info G/Rail listed as damaged.

(Doc. 51-3 at 42.)

On June 3, 2016, GEICO called and left a message for Mr.
Kannebecker to discuss the claim and request a statement from
Plaintiff.  (Doc. 51-2 ¶ 55.)  On the same date Mr. Kannebecker
spoke with GEICO and reiterated his request for a copy of the phone
conversation.  (Doc. 51-2 ¶ 56.)

On or about July 8, 2016, GEICO sent a letter to Mr.
Kannebecker stating that the claim remained open, it had not denied
the UM claim and was in the process of investigating it, and asked
for Mr. Kannebecker's cooperation in scheduling Plaintiff's
recorded statement.  (Doc. 51-2 ¶ 57.)  In another letter sent on
or about July 22, 2016, GEICO expressed a desire to review
Plaintiff's medical records and requested that Mr. Kannebecker
forward a copy of the records or provide permission for GEICO to
obtain them from her personal injury protection file.  (Doc. 51-2 ¶
58.)  Plaintiff's recorded statement was again requested.  (*Id.*)
Mr. Kannebecker did not respond to either letter and Defendant
never received Plaintiff's written statement or the signed
authorizations requested previously.  (Doc. 51-2 ¶¶ 46, 59, 60,
61.)

On or about October 18, 2016, GEICO served discovery requests
on Plaintiff.  (Doc. 51-2 ¶ 64.)  On November 29, 2016, GEICO sent
Mr. Kannebecker a letter requesting responses to the October 18th
requests within ten days.  (Doc. 51-2 ¶ 66.)  On December 13, 2016,
GEICO filed a Motion to Compel Plaintiff's discovery responses.

(Doc. 51-2 ¶ 67.)  Plaintiff mailed her discovery responses which included her medical records and responses to interrogatories on December 29, 2016.  (Doc. 51-2 ¶ 68.)

On or about February 1, 2017, GEICO sent a letter to Mr. Kannebecker stating Plaintiff's submissions and the entire claims file had been reviewed, GEICO was in a position to tender the policy limits for UM coverage, and a check was attached.  (Doc. 51-2 ¶ 69.)  On February 6, 2017, Mr. Kannebecker sent a letter to GEICO, the body of which states in its entirety "This check was received by our office alone in an envelope."  (Doc. 51-2 ¶ 70.)  The correspondence indicates a "check enclosure."  (Doc. 51-3 at 116.)  On February 23, 2017, GEICO again sent Plaintiff the letter sent on February 1st along with a check for $15,000.  (Doc. 51-2 ¶ 71.)  On February 24, 2017, Mr. Kannebecker sent a letter to GEICO stating that he was returning the check for $15,000 and the letter noted that a check was enclosed.  (Doc. 51-3 at 118.)

## II. Discussion

Defendant asserts that Plaintiff's bad faith claim is based on two theories: 1) GEICO lied to Plaintiff's counsel in denying Plaintiff's claim in the May 17, 2016, phone call; and 2) GEICO did not properly investigate and evaluate Plaintiff's claim.  (Doc. 52 at 5.)  Plaintiff does not dispute this assessment.  (*See* Doc. 55-1.)  Regarding the first theory, Defendant maintains Plaintiff cannot show that GEICO denied Plaintiff's claim and evidence shows

11

that GEICO told Plaintiff on several occasions that the UM claim had not been denied during the May 17th phone conversation. (*Id.*) Regarding the second theory, Defendant avers that it made payment of the policy limits within one month after receipt of the requested information and any delay was attributable to Plaintiff's failure to cooperate in the investigation of her claim. (*Id.*) Plaintiff responds generally that Defendant's actions clearly demonstrate bad faith conduct. (Doc. 55-1 at 1.) Plaintiff follows the statement with eleven "facts" which she avers are not disputed. (Doc. 55-1 at 1-2 (citing "timeline and exhibits"). )

## A.  *Legal Standards*

### 1.  Summary Judgment

Summary judgment is appropriate when the movant demonstrates there is no "genuine issue as to any material fact." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S.

12

at 248). In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014). Such inferences "must flow directly from admissible evidence." *Halsey*, 750 F.3d at 287.

The initial burden is on the moving party to show an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citations omitted). The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Id.* at 325. The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56 to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Id.* at 324. "The non-moving party must show where in the record there exists a genuine dispute over a material fact.'" *Hankins v. Wetzel*, 640 F. App'x 130, 132 (3d Cir. Jan. 6, 2016) (not precedential) (quoting *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007)). "A mere 'scintilla of evidence in support of the [non-moving party]'s position will be insufficient' to create a genuine issue of fact." *Hankins*, 640 F.

13

App'x at 132 (quoting *Anderson*, 477 U.S. at 252)).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

## 2. **Statutory Bad Faith**

An action for bad faith in Pennsylvania is governed by 42 Pa. C.S. § 8371 which provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S. § 8371.

The statute does not define what constitutes bad faith but Pennsylvania courts, the Third Circuit Court of Appeals, and decisions from district courts within the Third Circuit provide ample guidance. "The term 'bad faith' under section 8371 concerns 'the duty of good faith and fair dealing in the parties' contract

14

and the manner in which an insurer discharged . . . its obligation to pay for a loss in the first party claim context.'" *Berg v. Nationwide Mut. Ins. Co., Inc.*, 44 A.3d 1164, 1175-76 (Pa. Super. April 17, 2012) (quoting *Toy v. Metrolpolitan Life Ins. Co.*, 928 A.2d 186, 199 (Pa. 2007)) (alteration in original).  A panel of the Court of Appeals for the Third Circuit summarized the relevant framework for considering an insurance bad faith claim under Pennsylvania law in *Treadways LLC v. Travelers Indem. Co.*, 467 F. App'x 143 (3d Cir. 2012) (not precedential).

> "Bad faith" under Pennsylvania's bad faith statute--42 Pa. Const. Stat. § 8371, which provides a remedy in an action under an insurance policy--is defined as "any frivolous or unfounded refusal to pay proceeds of a policy." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (quoting *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)).  A valid cause of action for bad faith requires "clear and convincing evidence . . . that the insurer: (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Id.* Under the "clear and convincing" standard, "the plaintiff [must] show 'that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or nor the defendants acted in bad faith.'" *Id.* (quoting *Bostick v. ITT Hartford Grp., Inc.*, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999)).  Though we have found that bad faith may be found in circumstances other than an insurer's refusal to pay, "[a] reasonable basis is all that is required to defeat a claim of bad faith." *Id. See also Frog, Switch & Mfg. Co. V. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999).

*Treadways*, 467 F. App'x at 146-47.  Reiterating the two elements

15

set out in *Terletsky*, the Pennsylvania Supreme Court held in *Rancosky v. Washington National*, 170 A.3d 364, 377 (Pa. 2017), that "proof of the insurer's subjective motive of ill-will, while perhaps probative of the second prong of the . . . test, is not a necessary prerequisite to succeeding in a bad faith claim."

The Pennsylvania Superior Court has observed that "[b]ad faith claims are fact specific and depend on the conduct of the insurer *vis a` vis* the insured." *Condio v. Erie Ins. Exchange*, 899 A.2d 1136, 1143 (Pa. Super. 2006) (citing *Williams v. Nationwide Ins. Co.*, 750 A.2d 881, 887 (Pa. Super. 2000)). *In O'Donnell ex. rel. Mitro v. Allstate Ins. Co.*, 734 A.2d 901 (Pa. Super. 1999), the Pennsylvania Superior Court discussed the expanding nature of the applicability of the bad faith statute and held that the conduct of an insurer during the pendency of litigation may be considered as evidence of bad faith. *O'Donnell*, 734 A.2d at 906-08. Bad faith is not restricted to an insurer's denial of benefits and includes a wide variety of objectionable conduct including lack of good faith investigation and failure to communicate with a client. *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 500-01 (Pa. Super. 2004) (listing cases). Negligence or bad judgment do not constitute bad faith. *Brown*, 860 A.2d at 501 (citing *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1036 (Pa. Super. 1999)).

**B. *Defendant's Motion***

16

## 1. __Investigation and Evaluation of Plaintiff's Claim__

Defendant maintains it had a reasonable basis for its investigation, evaluation, and payment of policy limits to Plaintiff. (Doc. 52 at 15-16.) Assessing Plaintiff's argument to be that it should have paid policy proceeds based on her initial call without requiring supporting documentation or Proof of Claim, Defendant avers it was reasonable to require the Proof of Claim and information on how the accident occurred before paying benefits in accordance with the policy. (*Id.*)

Plaintiff responds that Defendant had no reasonable basis to deny her claim and advise her that she was at fault. (Doc. 55-1 at 4.) In support of this assertion, Plaintiff first points to Defendant's letter of May 7, 2016, in which it advised Plaintiff that "'[b]ased on the loss description provided, we have determined the driver of your vehicle to be at fault for the auto accident that occurred on May 4, 2016.'" (*Id.* (citing Ex. F).) Plaintiff contends this statement is at odds with her report of the incident. (*Id.*) She also points to the fact that Defendant did not inform her that her report gave rise to an uninsured motorist claim as evidence of a lack of reasonable basis to deny her claim. (*Id.* at 4-5.)

Taking inconsistent positions on whether a policy's requirements were satisfied cannot alone support a bad faith claim. *See*, *e.g.*, *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367-

68 (3d Cir. 2004). As set out above, Pennsylvania courts have clearly found that negligence or bad judgment do not constitute bad faith. *Brown*, 860 A.2d at 501 (citing *Adamski*, 738 A.2d at 1036).

Evidence shows that Defendant continued to investigate Plaintiff's claim following the May 7, 2016, letter and prior to being notified of attorney representation. As set out above, it is undisputed that Defendant sent Plaintiff a letter on or about May 10, 2016, which sought additional information from Plaintiff and requested completion and return of relevant forms. (Doc. 51-2 ¶ 36.) Plaintiff's attorney, Charles Kannebecker, sent a letter to GEICO on or about May 12, 2016, which advised that he represented Plaintiff, provided a summary of how the accident occurred, requested that the letter be accepted "as a notification of claim for UM benefits under Ms. Koerner's coverage with GEICO Insurance Company," and noted that GIECO "should undertake any investigation you elect as a result." (Doc. 51-2 ¶ 37.) Defendant sent another letter to the Law Office of Charles Kannebecker on or about May 16, 2016, which acknowledged Mr. Kannebecker's representation, requested completion and return of relevant forms, requested bills and documentation supporting the claim, and requested that Mr. Kannebecker contact Defendant to schedule a recorded statement. (Doc. 51-2 ¶ 38.) On May 16, 2016, the claim was transferred to Paul Brunskole for handling. (Doc. 51-2 ¶ 39.) The next day Mr. Brunskole ordered a copy of the police report and sent a letter to

18

and called Mr. Kannebecker. (Doc. 51-2 ¶ 40.) Later that day, Mr. Kannebecker returned the call. (Doc. 51-2 ¶ 41.) A recording of the May 17, 2016, phone conversation is contained in the Statement of Material Facts (Doc. 51-2 ¶ 43) and will be discussed below.

The events outlined indicate that Defendant's May 7th letter cannot be viewed in isolation. Defendant sought additional information about the claim directly from Plaintiff before receiving Mr. Kannebecker's letter of representation and notice of a UM claim. (Doc. 51-2 ¶ 36.) Defendant responded promptly to Mr. Kannebecker's letter and did not deny UM coverage in its responsive correspondence. (*Id.* ¶ 38.) Thus Plaintiff seeks to establish a bad faith claim based on conduct which occurred within one week of the accident giving rise to the claim where the insurer continued to investigate the claim and seek further information about a UM claim upon being notified of same. In the circumstances presented here, even if the May 7th letter made a premature determination about certain coverage which was inconsistent with its later findings, no reasonable fact finder could conclude that Defendant knew or recklessly disregarded its lack of a reasonable basis in denying the claim given subsequent events. At most the May 7th letter shows bad judgment or negligence on the part of the initial claims handler who drew conclusions from only the initial statements made by Plaintiff.

Plaintiff cites no authority for her conclusion that

Defendant's failure to advise Plaintiff that her claim gave rise to an unisured motorist claim is evidence of bad faith. (*See* Doc. 55-1 at 4-5.) On the contrary, the Pennsylvania Superior Court has found that an insurer had not acted in bad faith before a formal UIM claim was made even where the insurer was aware of the potential of such a claim. *Condio*, 899 A.2d at 1150-51; *see also Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, Civ. A. No. 3:13-CV-2247, 2015 WL 3742130 (M.D. Pa. June 15, 2015).

Similarly, Plaintiff conclusorily states that, beyond the initial handling of the claim, Defendant acted in bad faith in the handling of the litigation. (Doc. 55-1 at 5.) Plaintiff precedes the conclusion with references to Defendant's tender of $15,000 in UM benefits, its lack of acknowledgment of a bad faith claim, and the "mountains of pleadings" generated "in an attempt to avoid responsibility for its bad faith actions." (*Id.*) Plaintiff does not assert that the amount tendered was improper nor does she show that Defendant submitted frivolous filings. (*See* Doc. 55-1.) A review of the docket shows that many of Defendant's filings were appropriate responses to numerous complaints filed by Plaintiff and other filings were within the parameters of acceptable motion practice. Plaintiff cannot base a bad faith claim concerning Defendant's handling of the claim on Defendant's failure to acknowledge bad faith where Plaintiff has not presented facts giving rise to such a claim.

## 2. **May 17, 2016, Phone Conversation**

Defendant asserts that a transcript of the May 17, 2016, phone conversation shows that its claim representative, Paul Brunskole, did not deny Plaintiff's UM claim in the course of the conversation. (Doc. 52 at 9.) In her responsive Memorandum, Plaintiff's eleven bullet point "facts" (absent specific citation to the record) include four related to the May 17th conversation between Plaintiff's attorney and Mr. Brunskole (Doc. 55-1 at 1-2) but Plaintiff does not address Defendant's argument that the phone conversation does not evidence bad faith. Although this constitutes waiver of the argument, *see*, *e.g.*, *Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997), the Court will briefly address the merits of Defendant's position.

As set out in the Background section of this Memorandum, a recording of the May 17, 2016, phone conversation is contained in the Statement of Material Facts. (Doc. 51-2 ¶ 43.) A review of the transcript shows that Defendant's representative did not deny Plaintiff's UM claim during the course of the conversation—he discussed an ongoing investigation. (*Id.*) Mr. Brunskole's expressed skepticism about the events as presented by Plaintiff and her attorney was accompanied by his request for more information. (*Id.*) Mr. Brunskole repeatedly stated that Defendant had made no final determination regarding UM coverage. (*Id.*) The conversation at issue took place less than two weeks after Plaintiff's accident.

21

Thus, even if Defendant's initial investigation was less than perfect, its failure to reach the right conclusion in that early period and evident acknowledgment that the UM claim was the subject of ongoing consideration on May 17, 2016, cannot be construed as evidence of statutory bad faith. *See, e.g., J.C. Penney Life Ins. Co.*, 393 F.3d at 367-68.

### III. Conclusion

For the reasons discussed above, the Court concludes Defendant's Motion for Summary Judgment (Doc. 51) is properly granted and judgment will be entered in Defendant's favor on the claims remaining in the Third Amended Complaint (Doc. 26).  An appropriate Order is filed simultaneously with this Memorandum.


S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: March 6, 2018